JOURNAL ENTRY and OPINION
United Excavating Wrecking, Inc. appeals from a judgment of the common pleas court in favor of Drake Construction Company in connection with its complaint against Drake seeking payment for six invoices United claims to have not been fully paid by Drake. For the reasons given below, we affirm the judgment of the trial court.
The record reflects that on October 13, 1995, Drake, the general contractor for a post office building project in Bedford, Ohio, entered into a subcontractor agreement with United for United to perform site clearing, demolition, and excavation for the post office project. After United began working on the site, it discovered previously unknown, unsuitable subsurface materials at the site, including concrete foundation walls, debris and cinders. Drake then authorized United to excavate, remove, and dispose of these materials and to replace them with soil excavated from an adjoining lot referred to by the parties as the borrow pit. On November 29, 1995, Drake's Vice President, Steve Ciuni, sent a letter to the project architect, Brian Reeder, describing this extra work to be performed by United, which, as stipulated later at trial by the parties, formed part of the contract between these two parties. The letter estimated the additional work to be performed to include excavat[ing] debris and truck debris offsite to a dumpsite at $10 per cubic yard for 6,897 cubic yards and excavat[ing] debris and stockpile in a lawn area in the back of the site at $7 per cubic yard for 561 cubic yards.
Drake paid a total of $254,051.76 to United for the project at issue, including the original contract amount of $89,000 and $165,051.76 for the extra work described in the Nov. 29, 1995 letter.
Believing it had not been fully compensated for that additional work, on July 23, 1997, United commenced the instant action, asserting claims under six invoices for uncompensated additional work and seeking $112,850.19. The court referred this matter to a magistrate for a hearing. On July 18, 2000, the magistrate issued findings of fact and conclusions of law finding Drake had fully paid on those six invoices. The court, on October 23, 2001, issued its judgment in favor of Drake.
United now appeals, raising a single assignment of error, which states:
THE TRIAL COURT ERRONEOUSLY DISMISSED PLAINTIFF'S CLAIMS.
Although this assignment alleges error in the court's dismissal of United's claims, on appeal, United only challenges the court's decision regarding three of the six invoices, which relate to soil compaction, backfilling of the borrow pit, and payment for redepositing cinders.
In reviewing a case of this distinction, an appellate court is guided by the principle that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. See Seasons Coal Co. v. Cleveland, 10 Ohio St.3d 77, 461 N.E.2d 1273. [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. Id. (citing Ohio Jurisprudence 3d [1978] 191-192, Appellate Review, Section 603).
Invoice #6935 concerns United's excavation of soil from the borrow pit and hauling, dumping, and compacting it at the project site. Although United agrees that it removed 5,112 cubic yards from the borrow pit, it claims, nonetheless, that due to the uncompaction of soil during transporting, it had actually hauled 5878.8 cubic yards, an additional 766.8 cubic yards, based on a compaction rate of 85%. United, therefore, claims entitlement to that additional yardage at a rate of $7 per cubic yard totaling $5,367.60. Drake, on the other hand, maintains that United's compensation should be measured by the actual cubic yards of soil removed from the borrow pit, i.e., 5,112 cubic yards.
The evidence shows that United removed 5,112 cubic yards of soil from the borrow pit, loaded it into dump trucks, dumped it at the excavated building site, and spread and compacted it with a sheep-foot roller. Our review of the November 29, 1995 letter indicates that the parties did not oblige Drake to pay any additional amount calculated on the basis of a 15% compaction factor. Because the contractual terms do not require Drake to pay this additional amount, United is not entitled to it. United's contention regarding Invoice #6935 is, therefore, not well taken.
We next discuss invoices #6910 and #6934 together, as both concern the backfilling of the borrow pit.
United's invoice #6910 sought $5,299, an amount reflecting 757 cubic yards of materials backfilled at the borrow pit. Our review of the record shows that United actually backfilled a total of 4,078 cubic yards of materials at the borrow pit. Of this total cubic yardage, evidence at trial indicates that Drake paid United for 1,487 cubic yards on invoice #6910, 1,553 cubic yards on invoice #6907, and 281 cubic yards on invoice #R00001. Therefore, the dispute here concerns whether Drake still owes United for backfilling the remaining 757 cubic yards.
Of these 757 cubic yards, 528 cubic yards is the subject of invoice #6934, an invoice also disputed in the instant appeal. Testimony at trial shows that United excavated 528 cubic yards of cinders from the project site, which it stored adjacent to the borrow pit and later bulldozed into the pit once soil was removed from it. Under the terms described in the November 29, 1995 letter, Drake was to pay United $10 per cubic yard for excavating and removing materials to an off location dumpsite, or $7 per cubic yard for excavating and stockpiling the materials onsite. The evidence shows Drake paid $10 per cubic yard for excavating and disposing of all materials removed from the project site, including the excavated cinders which United stored temporarily onsite before dumping it at the borrow pit. As established by testimony at trial, because United had to move these cinders a second time, Drake paid United on a time and material basis, at $105 per hour for the four hours it took United to bulldoze these cinders into the pit; United accepted this payment. Thus, evidence presented at trial establishes that Drake paid for backfilling the 528 cubic yards of cinders into the borrow pit. United had already received $10 per cubic yard as consideration for removal and disposition of these excavated cinders; the fact that Drake permitted United to temporarily store these cinders and later dispose of them at the borrow pit does not entitle United to an additional $7 per cubic yard.
As to the remaining 229 cubic yards of materials that United backfilled at the pit, testimony at trial indicates that they consisted of concrete rubble, trees, branches, bricks and wood which United had excavated from the project site. Under the terms described in the November 29, 1995 letter, United was to truck and dump the excavated materials at an offsite dumpsite. Thus, as in the case of the excavated cinders, Drake had already compensated United for its disposition of these 229 cubic yards of unsuitable, subsurface materials when it paid United for the excavation, trucking, and dumping of materials removed from the project cite at $10 per cubic yard.
Because the court's judgment is supported by competent and credible evidence, we affirm that judgment.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.